UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

FILED
DEC 28 2012

| | | |
|---|---|---|
| PLAINS COMMERCE BANK, JEROME HAGEMAN, and RANDY ROBINSON, | * * * * | CIV 12-3021-RAL |
| Plaintiffs, | * * | |
| vs. | * * * | OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| LONG FAMILY LAND AND CATTLE CO., INC., RONNIE LONG, LILA LONG, and CHEYENNE RIVER SIOUX TRIBAL COURT, | * * * * * | |
| Defendants. | * | |

This case is a continuation of a dispute that culminated in a decision of the Supreme Court of the United States in <u>Plains Commerce Bank v. Long Family Land & Cattle Co.</u>, 554 U.S. 316 (2008). Approximately four years after the Supreme Court released its opinion in <u>Plains Commerce Bank</u>, Defendants Long Family Land and Cattle Company, Inc., Ronnie Long, and Lila Long resumed litigation by filing an action in the Cheyenne River Sioux Tribal Court against Plaintiffs Plains Commerce Bank, Jerome Hageman, and Randy Robinson. Plaintiffs responded by starting this federal court action to seek to enjoin the Tribal Court action. This case and the Plaintiffs' Motion for Summary Judgment present a legal issue: whether this Court should decide now or defer in the first instance to the Tribal Court to determine the effect of the Supreme Court's decision in <u>Plains Commerce Bank</u> on the underlying Tribal Court judgment. For the reasons explained in this Opinion and Order, this Court defers decision at this time to the Tribal Court based on the doctrine of tribal court exhaustion and comity interests. Therefore, this Court denies Plaintiffs' Motion for Summary Judgment and declines to grant the relief requested in Plaintiffs' Complaint.

## I. Undisputed Material Facts

In ruling on a motion for summary judgment, this Court must take the facts in the light most favorable to the non-moving party under Rule 56 of the Federal Rules of Civil Procedure. However, there exists no genuine dispute as to any material fact regarding the legal issues before this Court. The litigation history between these parties is a matter of public record and not a matter of disputed fact.

The principal Defendants in this case—Long Family Land and Cattle Company, Inc., Ronnie Long, and Lila Long (collectively "the Longs")—sued the primary Plaintiff in this case—Plains Commerce Bank—in the Cheyenne River Sioux Tribal Court in July 1999. Plains Commerce Bank, 554 U.S. at 322. Ronnie and Lila Long are enrolled members of the Cheyenne River Sioux Tribe and operated a ranch within the boundaries of the Cheyenne River Sioux Tribe reservation. Id. at 321. The Longs' claims arose out of a banking relationship that they had with Plains Commerce Bank, which is a South Dakota bank based outside of the Cheyenne River Indian Reservation. Id. Because of financial problems, the Longs had defaulted on certain loans, deeded over certain land to Plains Commerce Bank while retaining an option to repurchase the land, and entered into an agreement to lease the land back from Plains Commerce Bank. Id. at 321-22. Due to additional financial stress caused by cattle deaths during a particularly harsh winter, the Longs were unable to exercise the option to purchase when the lease agreement expired. Id. at 322. Plains Commerce Bank chose to evict the Longs and sell the land the Longs previously had owned to non-Indians. Id. The Longs sued the Bank in the Cheyenne River

Sioux Tribal Court for various claims, including breach of contract, bad faith, violation of tribal-law self-help remedies, and discrimination.[1] Id.

Plains Commerce Bank answered the Tribal Court complaint and unsuccessfully disputed the jurisdiction of the Tribal Court. Id. After a two-day jury trial in Tribal Court in December of 2002, a jury returned a verdict finding for the Longs on three of the four claims submitted to the jury and awarded $750,000.00 on a general verdict form. Id. at 323; Doc. 25-7 at 4. The Tribal Court denied the Bank's post-trial motion for judgment notwithstanding the verdict and entered judgment for the Longs in the amount of $750,000.00, plus interest. Id. The Tribal Court later entered a supplemental judgment awarding the Longs an option to purchase the land that Plains Commerce Bank had sold to non-Indians. Id.

Plains Commerce Bank appealed to the Cheyenne River Sioux Tribal Court of Appeals raising various issues, including a single jurisdictional issue: "The Cheyenne River Sioux Tribal Court lacked subject matter jurisdiction for a claim of discrimination against a non-tribal member, off reservation Bank which claim was presented to the jury. Such discrimination action tainted the entire trial." Doc. 25-5. Plains Commerce Bank later framed the issue before the Tribal Court of Appeals as: "Does the Cheyenne River Sioux Tribal Court lack jurisdiction for a claim of discrimination against an off-reservation bank." Doc. 25-6. Plains Commerce Bank did not appeal to the Tribal Court of Appeals the questions of jurisdiction over the breach of contract and contractual bad faith claims. See Doc. 27. To appeal to the Tribal Court of

---

[1] The Longs raised other claims, which the Tribal Court judge dismissed, including claims of a void contract, fraud, failure of consideration, and unconscionability. Doc. 25-7 at 4.

Appeals, Plains Commerce Bank as principal and Plaintiffs Jerome Hageman and Randy Robinson as sureties, executed an appeal bond in the amount of $875,922.46 for the judgment amount and interest. Doc. 23; Doc. 27. The Tribal Court of Appeals in November of 2004 upheld the judgment. Doc. 25-7.

Plains Commerce Bank then sued the Longs in federal district court challenging tribal jurisdiction over the discrimination claim.[2] Plains Commerce Bank v. Long Family Land & Cattle Co., Inc., CIV 05-3002-CBK. In Plains Commerce Bank v. Long Family Land & Cattle Co., Inc., 440 F. Supp. 2d 1070 (D.S.D. 2006), the Honorable Charles B. Kornmann on cross motions for summary judgment determined that tribal jurisdiction existed over the Longs' discrimination claim based on the first exception set forth in Montana v. United States, 450 U.S. 554 (1981), which allows a tribe to "regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." Id. at 565; see also Strate v. A-1 Contractors, 520 U.S. 438, 453 (1997) (noting Tribal Court jurisdiction is co-extensive to the regulatory authority of the tribe under Montana). The United States Court of Appeals for the Eighth Circuit affirmed Judge Kornmann's decision. Plains Commerce Bank v. Long Family Land & Cattle Co., Inc., 491 F.3d 878, 886 (8th Cir. 2007).

---

[2] As the Eighth Circuit put it, Plains Commerce Bank's claim in federal district court was "seeking a declaration that the tribal judgment was null and void and not entitled to recognition because the tribal court lacked jurisdiction over the Longs' discrimination claim and because the proceedings violated due process." Plains Commerce Bank v. Long Family Land & Cattle Co., Inc., 491 F.3d 878, 883 (8th Cir. 2007).

4

Plains Commerce Bank then filed a petition for writ of certiorari, which the Supreme Court granted. The Supreme Court framed the sole issue before it as "whether the Tribal Court had jurisdiction to adjudicate a discrimination claim concerning the non-Indian bank's sale of fee land it owned." Plains Commerce Bank, 554 U.S. at 320. The Supreme Court reversed the Eighth Circuit's decision and held that the Tribal Court did not have jurisdiction over the discrimination claim. Id. All nine justices agreed that the Tribal Court did not have jurisdiction to give Ronnie and Lila Long an option to repurchase land that Plains Commerce Bank had contracted to sell to non-Indians. See id. at 342 (Ginsburg, J., dissenting). The Supreme Court justices split five-to-four on other matters.

In May 2012, nearly four years after the Supreme Court decision in Plains Commerce Bank, the Longs filed another action in the Cheyenne River Sioux Tribal Court. Doc. 1-1. The Longs sued all three of the Plaintiffs in this case—Plains Commerce Bank, Jerome Hageman, and Randy Robinson—to seek to collect on the appeal bond executed by those parties in May 2003 as a part of the Bank's appeal to the Cheyenne River Sioux Tribal Court of Appeals. Doc. 1-1. The Longs' current Tribal Court complaint asserts that, because Plains Commerce Bank did not appeal from the jury's finding for the Longs on claims for breach of contract and contractual bad faith, the Bank still owes the entire amount that the jury awarded, plus interest, and that the Plaintiffs should pay under the appeal bond. Doc. 1-1.

Plains Commerce Bank, Hageman, and Robinson filed this action seeking a declaratory judgment that the Tribal Court has no jurisdiction over the new Tribal Court case and seeking preliminary and permanent injunctive relief to prevent the Tribal Court from proceeding. Doc. 1. These Plaintiffs named not only the Longs, but also the Cheyenne River Sioux Tribal Court

as Defendants. Doc. 1. The Plaintiffs then filed a motion for summary judgment, Doc. 21, which the Defendants resist. Doc. 26.

## II. Legal Analysis

The primary issue in this case presently is whether this Court should enjoin the Tribal Court case and decide the effect of the Supreme Court decision on the Tribal Court judgment or defer to the Tribal Court to do so in the first instance. Plains Commerce Bank invokes federal question jurisdiction under 28 U.S.C. § 1331. The issue of whether a tribal court has jurisdiction over nonmembers is a federal question. Plains Commerce Bank, 554 U.S. at 324. However, "even where a federal question exists, due to considerations of comity, federal court jurisdiction does not properly arise until available remedies in the tribal court system have been exhausted." Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation, 495 F.3d 1017, 1021 (8th Cir. 2007). Thus, this Court must determine whether "available remedies in the tribal court system" should be exhausted. See id.

Congress has "consistently encouraged" the development of tribal courts as part of its effort to foster tribal self-government. Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 14-15 (1987); Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 856 (1985). In deference to this commitment, the Supreme Court and in turn the Eighth Circuit have required exhaustion of tribal court remedies in matters related to reservation affairs. Iowa Mut. Ins. Co., 480 U.S. at 16 ("[T]he federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a full opportunity to determine its own jurisdiction.") (citation and internal quotation marks omitted); Bruce H. Lien Co. v. Three Affiliated Tribes, 93 F.3d 1412, 1420 (8th Cir. 1996) ("Supreme Court precedent and this court's pronouncements

based thereon require exhaustion of tribal court remedies in matters related to reservation affairs.") (citation omitted). By requiring parties to exhaust their tribal court remedies before seeking relief in federal court, this "tribal-court exhaustion doctrine," allows tribal courts to assert authority over reservation affairs without having to compete against federal courts for the right to do so. See El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 476, 478 (1999) (referring to this rule as the "doctrine of tribal-court exhaustion" or the "tribal-court exhaustion doctrine"); Iowa Mut. Ins. Co., 480 U.S. at 16 ("[U]nconditional access to the federal forum would place [federal courts] in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs."); Duncan Energy Co. v. Three Affiliated Tribes, 27 F.3d 1294, 1299 (8th Cir. 1994) ("Because a federal court's exercise of jurisdiction over matters relating to reservation affairs can impair the authority of tribal courts . . . the examination of tribal sovereignty and jurisdiction should be conducted in the first instance by the tribal court itself.") (citing Nat'l Farmers, 471 U.S. at 856). The tribal-court exhaustion doctrine is a comity-based rule arising out of a mutual respect between two sovereigns, rather than a jurisdictional prerequisite. See Iowa Mut. Ins. Co., 480 U.S. at 16 n.8 ("Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite."); Smith v. Moffett, 947 F.2d 442, 445 (10th Cir. 1991). In addition to promoting tribal self-government and self-determination, the tribal-court exhaustion doctrine encourages the "orderly administration of justice" and provides federal courts with the unique expertise of tribal courts in matters relating to the tribal court jurisdiction of their particular tribal court. Nat'l Farmers, 471 U.S. at 856.

The tribal-court exhaustion doctrine is not absolute, however. Tribal court exhaustion is unnecessary where:

> (1) an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) the action is patently violative of express jurisdictional prohibitions; or (3) exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

Bruce H. Lien, 93 F.3d at 1420 n.14 (citing Nat'l Farmers, 471 U.S. at 856 n.21). Plaintiffs argue that Tribal Court exhaustion should not be required because, they argue, the Longs' current Tribal Court action is motivated by a desire to harass or is conducted in bad faith and is patently violative of express jurisdictional prohibitions. Doc. 22 at 7. Plaintiffs make this argument based on their reading of the Supreme Court decision in Plains Commerce Bank as nullifying the general verdict award of $750,000.00. Doc. 22 at 7; Doc. 29 at 4-5.

In Plains Commerce Bank, the issue before the Supreme Court was whether the Tribal Court had jurisdiction over the discrimination claim. 554 U.S. at 320. However, the Supreme Court addressed the validity of the entire Tribal Court judgment because the Longs raised an issue of the Bank's standing. Id. at 324-27. That is, the Longs argued that, even if the Supreme Court were to determine that the Tribal Court lacked jurisdiction over the discrimination claim, the jury's damage award should remain based on the remaining claims. Id. at 324-25. The Supreme Court was "not persuaded" by the Longs' argument that the jury's damage award was premised entirely on claims other than the discrimination claim. Id. at 325. Rather, the Supreme Court reasoned, the general verdict on damages and the verdict form used "establish that the jury could have based its damages award, in whole or in part, on the finding of discrimination." Id. The Supreme Court anticipated that the consequences of its decision could include "vacatur of the general damages award, vacatur of the option to purchase, [and] a new trial on the other claims." Id. at 327. The Longs' newly-filed Tribal Court action thus appears to pursue a

8

position—that the money judgment in Tribal Court should remain valid—accepted by the dissenting justices but at odds with the majority opinion. See id. at 342 (Ginsburg, J., dissenting) ("I dissent from the Court's decision, however, to the extent that it overturns the Tribal Court's principal judgment awarding the Longs damages in the amount of $750,000 plus interest.").

The Longs, however, do not base their contention that the Tribal Court judgment is still valid on some different interpretation of the Supreme Court decision in Plains Commerce Bank. Instead, the Longs point to the open question of which approach the Cheyenne River Sioux Tribal Court would adopt on whether a jury's general damage verdict based on multiple claims, one of which has been found invalid, may be upheld. Federal courts, based on a series of Supreme Court cases, generally hold that a jury's general verdict awarding damages will be upheld only when there is substantial evidence to support each theory of liability submitted to the jury. See Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co., 370 U.S. 19, 30 (1962); United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 618-19 (1959); Wilmington Star Mining Co. v. Fulton, 205 U.S. 60 (1907); Maryland v. Baldwin, 112 U.S. 490, 494-95 (1884). In short, in a federal court, if one of the theories that supported a general damages verdict was inappropriately submitted to the jury, then the general verdict typically cannot stand. Sunkist Growers Inc., 370 U.S. at 30; AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC, 386 F. App'x 5, 7 (2d Cir. 2010) ("[W]hen alternative theories for imposing liability are given to the jury, but one of those theories should not have been submitted . . . the usual course is to reverse . . . and order a new trial . . . ."); Barber v. Whirlpool Corp., 34 F.3d 1268, 1278 (4th Cir. 1994) (holding that in the Fourth Circuit "a general verdict may not stand" if one of the two underlying claims is reversed); Friedman & Friedman, Ltd. v. Tim

9

McCandless, Inc., 606 F.3d 494, 502 (8th Cir. 2010) ("'The rule in this circuit is clear that when one of two theories has erroneously been submitted to the jury, a general verdict cannot stand.'") (quoting Dudley v. Dittmer, 795 F.2d 669, 673 (8th Cir. 1986)); Kern v. Levolor Lorentzen, Inc., 899 F.2d 772, 790 (9th Cir. 1990) ("More than a century ago, the Supreme Court explained that, because we cannot read the minds of jurors, a general verdict that may have been based on an improper theory of liability must be reversed."). Although there is some confusion in the authority as to what to call this rule, one federal court of appeals has labeled it "the general verdict rule." AIG Global, 386 F.App'x 5 at 7; see also 3 Fed. Jury Prac. & Instr. § 106:01 (6th ed.) (referring to this rule as the "general verdict rule"); but see Martinmaas v. Engelmann, 612 N.W.2d 600, 615 (S.D. 2000) (Konenkamp, J., concurring) (calling the federal rule the "two-issue rule"). The underlying rationale for the approach followed in federal court is that a court cannot plumb the minds of jurors to know whether a general verdict was based in whole or in part on an improperly submitted theory of liability, and thus such a general verdict should be reversed and a new trial then held. See Friedman & Friedman, 606 F.3d at 502; Dudley, 795 F.2d at 673. Many states have adopted the approach followed in federal court. See e.g., Prince George's Cnty., Maryland v. Longtin, 988 A.2d 20, 34 n.33 (Md. Ct. Spec. App. 2010); Gonyea v. Duluth, Missabe & Iron Range Ry. Co., 19 N.W.2d 384, 389 (Minn. 1945); Martin v. N. Pac. Ry. Co., 149 P. 89, 91 (Mont. 1915); Heinen v. Heinen, 186 P.2d 770, 777-78 (Nev. 1947); Great Lakes Aircraft Co., Inc. v. City of Claremont, 608 A.2d 840, 846-47 (N.H. 1992) (accepting the approach followed in federal court but "only for purposes of this appeal"); Maccia v. Tynes, 120 A.2d 263, 268 (N.J. Super. Ct. App. Div. 1956) ("The weight of authority . . . hold[s] that there must be a reversal even if the error infects only one of the issues."); Salinas v. John Deere Co.,

Inc., 707 P.2d 27, 32 (N.M. Ct. App. 1984); Stewart v. Newbury, 115 N.E. 984, 985 (N.Y. 1917); Barta v. Hondl, 118 N.W.2d 732, 736 (N.D. 1962); Bredouw v. Jones, 431 P.2d 413, 420-21 (Ok. 1966); Hale v. Maersk Line Ltd., 732 S.E.2d 8, 19 (Va. 2012); Davis v. Microsoft Corp., 70 P.3d 126, 135 (Wash. 2003) (en banc); Fife v. State, 676 P.2d 565, 568 (Wyo. 1984) (citing Sunkist Growers Inc., 370 U.S. 19, and Baldwin, 112 U.S. 490, but applying the rule in the criminal context).

However, some states choose not to follow the federal court approach and instead allow a general verdict to stand even when one of the causes was erroneously submitted to the jury. See e.g., McCloud v. Roy Riegels Chems., 97 Cal. Rptr. 910, 915 (Cal. Ct. App. 1971); Spears v. Elder, 5 A.3d 500, 503-04 (Conn. 2010); Grenitz v. Tomlian, 858 So. 2d 999, 1006-07 (Fla. 2003); Elam v. Lincoln Elec. Co., 841 N.E.2d 1037, 1043 (Ill. App. Ct. 2005); Lahm v. Burlington N. R.R. Co., 571 N.W.2d 126, 131 (Neb. Ct. App. 1997); Cent. Ohio Joint Vocational Sch. Dist. Bd. of Edn. v. Peterson Constr. Co., 716 N.E.2d 1210, 1214 (Ohio Ct. App. 1998); Shoup v. Wal-Mart Stores, Inc., 61 P.3d 928, 935 (Or. 2003); Todd v. S. Carolina Farm Bureau Mut. Ins. Co., 336 S.E.2d 472, 473-74 (S.C. 1985); Martinmaas v. Engelmann, 612 N.W.2d at 615 (Konenkamp, J., concurring); In re Estate of Gower, No. 01A01-9710-CH-00605, 1998 WL 34190566, at *3-4 (Tenn. Ct. App. July 1, 1998); Lyon v. Burton, 5 P.3d 616, 623 (Utah 2000); Orr v. Crowder, 315 S.E.2d 593, 608 (W. Va. 1983). Under this alternative approach, sometimes called the "two issue" rule,[3] "when the jury returns a general verdict involving two or more issues

---

[3] There is confusion regarding the proper name of this rule that is applied in these states. Some sources refer to this state law rule as the "two issue rule." See e.g., Todd, 336 S.E.2d at 473-74 (referring to the rule as the "'two issue' rule"); Grenitz, 858 So. 2d at 1007 (referring to the rule as the "two issue rule"). Other sources refer to this same rule as the "general verdict rule." See e.g., Spears, 5 A.3d at 503-04 (referring to the rule as the "general verdict rule"); Skender v.

11

and its verdict is supported as to at least one issue, the verdict will not be reversed on appeal." Todd, 336 S.E.2d at 473-74. The underlying rationale behind this approach that rejects the prevailing federal rule is the assumption that, when a verdict is sustainable on more than one theory, the general verdict may be supported by the theory unaffected by error, which in turn simplifies the work of trial courts and limits the range of errors presented to the appellate court. Lahm, 571 N.W.2d at 131. Among the jurisdictions that follow this alternative approach is South Dakota. Limmer v. Westegaard, 251 N.W.2d 676, 679 (S.D. 1977); Eberle v. Siouxland Packing Co., Inc., 266 N.W.2d 256, 258 (S.D. 1978); Martinmaas, 612 N.W.2d at 615 (S.D. 2000) (Konenkamp, J., concurring) (noting that "South Dakota belongs to a minority of jurisdictions" following the rule that "when a jury returns a general verdict encompassing two or more issues and the verdict is supported by at least one issue, the case will not be reversed.")

This alternative "two issue" approach seems best suited for instances where the error in submission of one claim to a jury was harmless error that would not have affected a jury's general damage award and not for instances where the minds of the jurors would need to be plumbed to determine whether a general damage award would have been the same. Indeed, some federal courts have recognized a "harmless error exception" to the federal general verdict rule, upholding a general verdict even if one of its underlying claims was improperly submitted if the error was

---

Brunsonbuilt Const. & Dev. Co., LLC, 148 P.3d 710, 716 (Nev. 2006) (referring to the rule as the "general verdict rule"). Still others refer to this rule as both the "general verdict rule" and the "two issue rule." Lahm, 571 N.W.2d at 131 (calling the rule applied in the state both the "general verdict" rule and the "two issue" rule); Prince George's Cnty. Maryland v. Longtin, 988 A.2d at 35 n.33 (noting that the "general verdict rule" and the "two issue rule" both refer to the same doctrine); 5 C.J.S. Appeal and Error § 904 (discussing the general verdict rule and the two issue rule in the same supplement). For the sake of clarity, this Opinion and Order will refer to the rule applied in federal courts as the "federal general verdict rule" and the rule applied in certain states as the "two issue rule."

harmless. Ryan Patrick Phair, Appellate Review of Multi-Claim General Verdicts: The Life and Premature Death of the Baldwin Principle, 4 J. App. Prac. & Process 89, 111 (2002). The Eighth Circuit, for example, has held that a new trial is not required every time one claim in a multi-claim scenario is improperly submitted and the jury returns a general verdict and global damage award. See e.g., Ondrisek v. Hoffman, 698 F.3d 1020, 1026-27 (8th Cir. 2012). If "one of alternative theories of liability fully sustains the damages awarded, the award should stand despite the erroneous submission of another theory, where the damages are the same under a properly submitted theory." Id. (upholding a global damage award after reversing one of three theories of liability because the defendant was found liable under all three theories, liability under each theory would result in the same damage figure, and, thus, the "error did not affect the parties' substantial rights or the trial's probable outcome"). A new trial is also not necessary when a general verdict is rendered based on a submission of two claims to the jury—one proper and one improper—if the appellate court is "fairly convinced that the jury proceeded only on the sound ground." Mueller v. Hubbard Milling Co., 573 F.2d 1029, 1039 (8th Cir. 1978). But this harmless error exception has "very rarely has been applied to uphold a general verdict." Phair, Appellate Review, supra, at 111. A retrial is required where a jury returns a global damage award supported by two or more theories or claims that permit different damage amounts, and one of those theories or claims is upset on appeal. See Friedman, 606 F.3d at 502 (requiring a new trial when the jury found the defendant liable under two separate counts, returned a global compensatory damage award, and one of the claims was upset on appeal because the court had no way of knowing whether the jury awarded some portion of the award for the properly submitted claim and some portion for the improperly submitted claim). The Longs made an

argument very similar to a "harmless error" assertion to the Supreme Court that the jury verdict on damages should stand because it was based on the remaining contract-based claims, but a majority of the justices were "not persuaded." Plains Commerce Bank, 554 U.S. at 324-25.[4] Indeed, the situation here is more akin to the Freidman case than to the Ondrisek or Mueller cases, in that the common law discrimination claim submitted to the jury was a distinct theory of liability, which may have supported a different damage award than the contract based claims.

The Supreme Court had the federal general verdict rule in mind when it reasoned that the general verdict in the Tribal Court on damages suggested "that the jury could have based its damages award, in whole or in part, on the finding of discrimination." Plains Commerce Bank, 554 U.S. at 325. The Supreme Court likewise anticipated that the federal general verdict rule would be applied when it anticipated that future proceedings could include "vacatur of the general damages award, vacatur of the option to purchase, [and] a new trial on the other claims."

---

[4] Four other states appear conflicted about whether to apply the approach followed in federal courts, or the approach followed in certain states sometimes called the two issue rule. Compare Auto. Acceptance Corp. v. Powell, 234 So. 2d 593, 600 (Ala. Civ. App. 1970) (applying the alternative approach sometimes called the two issue rule), with John Deere Indus. Equip. Co. v. Keller, 431 So. 2d 1155, 1157 (Ala. 1983) ("We cannot presume that the general jury verdict relates to one of the counts which the evidence did support, where it is equally possible that it is based on the count which is unsupported by the evidence."); compare State ex rel. Corbin v. United Energy Corp. of Am., 725 P.2d 752, 759 (Ariz. Ct. App. 1986) (applying the alternative approach sometimes called the two issue rule), with S. Cas. Co. v. Hughes, 263 P. 584, 588 (Ariz. 1928) (applying the approach followed in federal court); compare Ledee v. Devoe, 549 S.E.2d 167, 173 (Ga. Ct. App. 2001) (applying the alternative approach sometimes called the two issue rule), with Taylor v. Austin, 88 S.E.2d 190, 192 (Ga. Ct. App. 1955) (applying the approach followed in federal court); compare Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys. Corp., No. 13-11-00117, 2012 WL 2605066, at *6 (Tex. Ct. App. July 5, 2012) (applying the alternative approach sometimes called the two issue rule), with Tisdale v. Panhandle & S.F. Ry. Co., 228 S.W. 133, 137 (Tex. Comm'n App. 1921) (applying the approach followed in federal court).

See id. at 327. Indeed, even the dissenting opinion anticipated that the effect of the Supreme Court decision would be overturning the $750,000.00 judgment. Id. at 342 (Ginsburg, J., dissenting) ("I dissent from the Court's decision, however, to the extent that it overturns the Tribal Court's principle judgment awarding the Longs damages in the amount of $750,000 plus interest.").

Yet, the ultimate ruling of the Supreme Court was to reverse the judgment of the Eighth Circuit. Id. at 342. The single issue before the Supreme Court was whether the Tribal Court lacked jurisdiction over the discrimination claim. Id. at 320. Indeed, that was the only issue framed by the initial federal court filing in 2005. See Plains Commerce Bank, 491 F.3d at 883. The Supreme Court concluded that Plains Commerce Bank had standing as the Court was "not persuaded" that the damage award was unconnected to the discrimination claim, but did not specifically direct what would occur upon remand. Plains Commerce Bank, 554 U.S. at 325. Under the circumstances, this Court cannot characterize the action in Tribal Court that seeks to enforce the $750,000.00 judgment based on a theory that the Tribal Court should adopt the alternative "two issue" approach followed by certain states to constitute "an assertion of tribal jurisdiction . . . motivated by a desire to harass or . . . conducted in bad faith." See Bruce H. Lien, 93 F.3d at 1420 n.14 (citing Nat'l Farmers, 471 U.S. at 856 n.21).

Plaintiffs also argue that the Longs' current Tribal Court case is patently violative of express jurisdictional prohibitions. This exception to the tribal-court exhaustion doctrine "refers to specific prohibitions on designated tribal remedies or to prohibitions on a tribal forum's assertion of jurisdiction over a dispute." Reservation Tel. Coop. v. Three Affiliated Tribes, 76 F.3d 181, 185 (8th Cir. 1996). "A substantial showing must be made by the party seeking to

invoke [the express jurisdictional prohibition] exception to the tribal exhaustion rule." Kerr-McGee Corp. v. Farley, 115 F.3d 1498, 1502 (10th Cir. 1997). Indeed, "tribal courts rarely lose the first opportunity to determine jurisdiction because of an 'express jurisdictional prohibition.'" Id. The majority of cases applying the "express jurisdictional prohibition" exception involve statutes that grant the federal government exclusive jurisdiction. See N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty., 991 F.2d 458, 463 (8th Cir. 1993) (holding exhaustion of tribal court remedies unnecessary in case concerning tribal ordinances regulating nuclear materials because Hazardous Materials Transportation Act preempted tribal ordinances); Blue Legs v. United States Bureau of Indian Affairs, 867 F.2d 1094, 1097-98 (8th Cir. 1989) (holding plaintiffs bringing suit in federal court against tribe under the federal Resource Conservation and Recovery Act (RCRA) did not need to exhaust tribal remedies because RCRA placed exclusive jurisdiction for suits brought under the RCRA in federal courts); Deborah F. Buckman, Annotation, Construction and Application of Federal Tribal Exhaustion Doctrine, 186 A.L.R. Fed. 71 § 11 (2003).

The Supreme Court in Plains Commerce Bank appeared to contemplate that the $750,000.00 general verdict would be vacated and that a new trial on damages would occur based on the jury findings of breach of contract and breach of contractual good faith. See 554 U.S. at 327. However, there is nothing in the Supreme Court's decision that provides an express jurisdictional prohibition to further Tribal Court proceedings, and indeed the new trial on damages foreseen as a possibility by the Supreme Court presumably would take place in Tribal Court. Id. There is no applicable statute granting exclusive federal jurisdiction here. The first exception recognized in the Montana case, concerning "activities of nonmembers who enter

16

consensual relationships with the tribe or its members," 450 U.S. at 565, would appear to apply to a situation where the Bank and two individuals as sureties execute and file an appellate bond in tribal court in order to appeal a tribal court ruling to an appellate tribal court. See Strate, 520 U.S. at 453 (noting tribal court jurisdiction is co-extensive to the regulatory authority of the tribe under Montana). In short, there is nothing about the presently pending Tribal Court case seeking to execute on a Tribal Court bond that triggers an express jurisdictional prohibition of a Tribal Court proceeding. The Tribal Court of course cannot, and this Court anticipates will not, ignore the Supreme Court decision in Plains Commerce Bank, 554 U.S. 316.

Finally, one of the Defendants—Cheyenne River Sioux Tribal Court—is a quasi-sovereign entity with protection of partial sovereign immunity. See Fox Drywall & Plastering Co., Inc. v. Sioux Falls Const. Co., No. 12–4026, 2012 WL 1457183, at *9 n.4 (D.S.D. April 26, 2012) (explaining that tribal sovereign immunity extends to tribal court s acting within the scope of their authority). Such tribal sovereign immunity, however, is "subject to the well-established exception" outlined in Ex Parte Young, 209 U.S. 123, 159-60 (1908). Baker Elec. Co-op, Inc. v. Chaske, 28 F.3d 1466, 1471 (8th Cir. 1994). Thus, if the tribal court acts beyond the scope of its authority, the tribal court is not entitled to tribal sovereign immunity. See N. States Power Co., 991 F.2d at 460. Because the Tribal Court has jurisdiction, in the first instance, to determine whether the Tribal Court judgment and thus the appellate bond has any validity in the wake of the Supreme Court's decision in Plains Commerce Bank, the Tribal Court is not acting beyond the scope of its authority in considering that issue and is entitled to tribal sovereign immunity at this juncture of the proceedings.

17

The denial of Plaintiffs' Motion for Summary Judgment and the analysis in this Opinion and Order makes the relief requested in Plaintiffs' Complaint—a declaratory judgment that the Tribal Court lacks jurisdiction over the underlying case and enjoining the Tribal Court action—inappropriate to enter. Defendants have not filed a motion for summary judgment, however. If the Tribal Court somehow were to determine that, notwithstanding the apparent contemplation of the Supreme Court, the alternative "two issue" rule as followed by certain states including South Dakota applies, this Court could foresee an action similar to this one being started anew. If, however, the Tribal Court follows the approach followed in federal court and many states as apparently contemplated by the Supreme Court, and thereafter conducts a new jury trial on the damages to which the Longs are entitled on the breach of contract and contractual bad faith claims, then there may be no further proceedings in this Court. At this time, it appears appropriate to enter judgment of dismissal in favor of the Defendants without prejudice to re-filing a subsequent action depending on the ruling of the Tribal Court. This Court will allow each of the parties twenty-one (21) days from filing of the Opinion and Order to notify this Court of their respective positions with regard to whether judgment of dismissal should now enter and to brief that issue, if they so choose.

Dated December 28th, 2012.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE